NOTE.—See *Ruckman* v. *Ruckman*, 1 FED. REP. 587.

---

### SCHUELENBURG & BOECKLER *v.* MARTIN and others.

*(Circuit Court, D. Kansas. June 14, 1880.)*

MORTGAGE—FUTURE ADVANCES.—A mortgage given to secure future advances, at a time when no indebtedness existed, is valid.

DEBTOR AND CREDITOR—APPLICATION OF MONEY.—Where money has been received in part payment of a running account, and no specific application has been made of the same, a chancellor can, in his discretion, apply such money to that portion of the account which remains unsecured, without regard to the order of time in which the indebtedness for the several items of account was incurred.

MORTGAGE—DECEDENT'S ESTATE—PROOF OF DEBT.—Proof of a debt against the estate of a deceased mortgagor, and receipt of a dividend from the assets of the same, does not extinguish a mortgage given to secure a part of such debt.

McCRARY, C. J. This is a bill to foreclose a mortgage executed by Hugo Kullak to the plaintiffs. The defendants are the heirs at law of the mortgagor, who, since the execution of the mortgage, has deceased.

The evidence shows that plaintiffs, and the said Kullak, about the first day of April, 1869, entered into a contract as follows: The plaintiffs, who were dealers in lumber at St. Louis, Missouri, agreed to furnish to said Kullak, who was engaged in the same business at Topeka, Kansas, such quantities of lumber as he might order for a period of one year, on a credit of 60 days, provided no order for more than

$5,000 worth of lumber should be made at any one time, and the indebtedness at no time during said year to exceed said sum of $5,000. To secure the payment of all bills or accounts for lumber ordered and delivered under this arrangement the mortgage sued on was executed. Numerous lots of lumber were ordered and furnished during the year covered by the mortgage, and payments were made on account, from time to time, but at the end of the year there was a balance due the plaintiffs of considerably more than $5,000. No settlement was made at the end of the year, but the account was continued through three additional years, and up to July 13, 1873, when the mortgagor died, being then indebted to plaintiffs, on the account, in the sum of $17,832.62. During the period covered by these transactions lumber was ordered by said Kullak, and furnished by plaintiffs, amounting in the aggregate to over $190,000, and payments thereon were made, from time to time, by Kullak, aggregating over $172,-000. The parties frequently discussed the state of the account after the expiration of the year covered by the mortgage, and Kullak often said he considered the mortgage as security for $5,000 of his indebtedness, but no formal settlement was ever made, nor was any specific application of the payments to any particular portion of the account ever directed by Kullak or made by plaintiffs.

The plaintiffs have proved their whole claim against the estate of Kullak in the probate court of Shawnee county, Kansas, and the same has been allowed; no proof that the same, or any part thereof, was secured by mortgage, being made in that court. It appears, from the agreement of parties on file, that the whole amount of the plaintiffs' claim against said estate, as proved and allowed in the probate court, was $19,700.44, including the account in controversy here, and that the plaintiffs have received from the administrator two dividends upon the whole sum, amounting to $5,319.11. My conclusions are as follows:

1. It is no objection to the validity of the mortgage that it was given to secure future advances, no present indebtedness subsisting at the time of its execution. *Conrad* v. *Atlantic*

*Ins. Co.* 1 Peters, 386. This doctrine is now well settled, and it is not necessary to cite the numerous authorities in its support. It is not disputed by counsel for defendants.

2. The payments made after the expiration of the year covered by the mortgage should, under the circumstances, be applied to the liquidation of the unsecured portion of the account. There is some conflict of authority upon the question of the appropriation of payments in such a case. It is clear that the debtor may direct the application of money paid by him to a creditor having several claims against him, and it is also clear that if the debtor gives no direction he is presumed to leave the question to the discretion of the creditor, who may make the application. But there are cases which hold that where the debtor has given no direction, and the creditor has made no particular application, the court should presume, in favor of the debtor, that he intended to extinguish that debt which would bear most heavily upon him; as, for example, a mortgage or judgment. *Patterson et al.* v. *Hull et al.* 9 Conn. 747; *The Antarctic*, 1 Sprague, 206. But a different rule has been adopted by the supreme court of the United States. In *Field et al.* v. *Holland et al.*, 6 Cranch, 8, Chief Justice Marshall, in delivering the opinion of the court, said: "It is contended by the plaintiffs that if the payments have been applied by neither the creditor nor the debtor they ought to be applied in the manner most advantageous to the debtor, because it must be presumed that such was his intention. The correctness of this conclusion cannot be conceded. When a debtor fails to avail himself of the power which he possesses, in consequence of which that power devolves upon the creditor, it does not appear unreasonable to suppose that he is content with the manner in which the creditor will exercise it. If neither party avails himself of his power, in consequence of which it devolves upon the court, it would seem reasonable that an equitable application should be made. It being equitable that the whole debt should be paid, it cannot be inequitable to extinguish first those debts for which the security is most precarious." And see *Mayor, etc.,* v. *Patten,* 4 Cranch, 317;

10*

*The U. S.* v. *January et al.* 7 Cranch, 572. This rule has been applied by the supreme court of Kansas. *Shellabarger* v. *Binns,* 18 Kan. 345.

3. It is insisted by counsel for defendants that this rule is only applicable to a case where there are several separate and distinct debts, and that it is, therefore, not a proper guide for the determination of the present case, which is one of a continuous or running account. In such a case it is insisted that the payments must be applied to the extinguishment of the first or oldest items of the account. The general rule, that payments made on an open running account are presumably to be applied to the extinguishment of the items thereof in the order of their dates, is well settled. *Postmaster General* v. *Farlen,* 4 Mason, 333; *The U. S.* v. *Wardwell,* 5 Mason, 82; *The U. S.* v. *Kirkpatrick,* 9 Wheat. 738; *Jones* v. *The U. S.* 7 How. 681. But a different rule must prevail, under the authority of *Field et al.* v. *Holland et al.,* in a case where the earlier items of the account are secured, and the later items unsecured. Besides, the question of the application of the payments, in such a case, rests largely in the discretion of the chancellor, and in this case the proof shows, as already suggested, that the parties intended to preserve the security of the plaintiffs' mortgage to the extent of $5,000 of the indebtedness, and it is clearly equitable to apply the payments so as to carry out that intention. It may be added that we have here two separate contracts: first, the mortgage and the indebtedness secured thereby; and, secondly, the open account not connected with, or secured by, the mortgage. Viewed in this light, we may, for the purpose of applying the payments, separate the secured from the unsecured portion of the account, and treat them as separate debts.

4. The fact that plaintiffs proved their entire debt as against the estate of Kullak, and received two dividends thereon from the assets of said estate, does not extinguish their rights under the mortgage. The sum collected from the estate upon that portion of the debt which is secured by the mortgage must, however, be credited thereon. It appears from the stipulation of the parties that the plaintiffs have

received from the assets of the estate 27 per cent. of the entire claim, including the $5,000 covered by the mortgage sued on, or $1,350 on account of said mortgage debt. This must be credited, and the plaintiffs are entitled to a decree for the balance, to-wit, $3,650, and interest from April 1, 1870. The plaintiffs have offered to take a decree for $5,000, which, being less than the sum thus found due, including interest, the decree will be for that sum, with costs.