Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. This appeal raises only the question of whether wharfage dues, under the contract of the Louisiana Construction & Improvement Company with the city of New Orleans, of date May 23, 1891, should be charged and collected upon the gross or the net tonnage of the vessels using the wharf. For the reasons given in the case of Coul v. Improvement Co. (just decided) 62 Fed. 749, this case is ruled the same way, and the decree appealed from is affirmed.

---

### THE ANGERTON.

#### MELBURN et al. v. LOUISIANA CONST. & IMP. Co.

(Circuit Court of Appeals, Fifth Circuit. May 22, 1894.)

#### No. 221.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

This was a libel by the Louisiana Construction & Improvement Company against the Angerton (William Melburn and others, claimants), for wharfage. The district court rendered a decree for libelant. Claimants appealed.

Henry P. Dart, for appellants.

J. R. Beckwith, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. This appeal raises only the question of whether wharfage dues, under the contract of the Louisiana Construction & Improvement Company with the city of New Orleans, of date May 23, 1891, should be charged and collected upon the gross or the net tonnage of the vessels using the wharf. For the reasons given in the case of Coul v. Improvement Co. (just decided) 62 Fed. 749, this case is ruled the same way, and the decree appealed from is affirmed.

---

### WOOD et al. v. HUBBARD.

(Circuit Court of Appeals, Third Circuit. July 9, 1894.)

#### No. 2.

1. SHIPPING—CHARTER PARTY—FREIGHT EARNED—COMMENCEMENT OF VOYAGE.
   On completing loading, a vessel proceeded, pursuant to her charter, in tow of the charterers' tug, down a river in prosecution of her voyage, but became icebound in the river, and so remained several weeks, until the river opened, when, by order of the charterers, she was towed back to the port of loading, and her cargo was discharged. Her crew was not complete at the time of leaving port, but was sufficient while she was being towed down the river, and men to fill the vacancies had been engaged to board her at its mouth. *Held*, that she had commenced the voyage, so as to earn freight, as she had actually left her port of loading with manifest intent to proceed to her port of destination, and the absence of part of her crew had not contributed to the delay.

2. SAME—FRUSTRATION OF VENTURE.
   While the vessel remained icebound, the day by which the charterers had contracted to deliver the cargo to purchasers passed, and the contract was canceled by the purchasers for the delay. No notice of the necessity of delivery by that day had been communicated to the master of the vessel or any one representing her. *Held* that, there having been no breach of any essential stipulation by the vessel, necessarily resulting