*684
 
 Mr. Justice DANIEL
 

 delivered the opinion of «the court.
 

 The case in the Circpit Court was an action of debt, instituted to recover the amount of a default claimed by the United States of Walter F. Jones, ás postmaster of the Borough of Norfolk, in the State of Virginia. The said Walter F. Jones, having beén appointed postmaster of Norfolk, executed, on the 8th day of August, in the year 1836, his bond, with the plaintiff in error and one Duncan Robertson as his sureties, in the penalty of ten thousand dollars, conditioned for the faithful performance of the duties of his office. In the year 1839, Walter F. Jones was removed from office, the United States claiming against him a balance of $ 5,515.89 as due from him on the 31st of August in the year last mentioned; and to recover this balance, the action on his official bond was instituted in the Circuit Court against him and his sureties. After the institu-; tion of the suit, it was abated as to Walter F. Jones by his death; Robertson made default in the case, and as tó him a writ of inquiry of damages was .executed ; the plaintiff in error alone appeared and made defence, upon four several pleas, as to each of which replication and issue were taken. The first plea interposed was that of condition performed generally. The second and third pleas, presenting substantially the same-de-fence, rely, upon the act of Congress of the 3d of March, 1825, entitled “ An act to reduce into one the several acts establishihg and regulating the Post-Office Department,-” and particularly upon that portion of the act which prescribes that the Postmaster-General shall obtain from the" postmasters their accounts and vouchers for their receipts and expenditures once ini three months, or oftener, with the balances therein arising in favor of the General Post-Office; and that, if any postmaster, or other person authorized to receive the postage of letter^ &c., shall neglect or refuse to render his accounts, and pay over to thé Postmaster-General the.balance due by him at- the end.of. every three months, it shall be the duty of the Postmaster^General to cause a suit to be commenced against the person so neglecting or refusing;. and if default be made by the postmaster at any time, and the Postmaster-General shall fail to institute ' suit against such postmaster and sureties.within two years after such default shall be made, then and in that case the said sureties shall not be held liable to the United States, nor shall suit be instituted against’them. These pleas further aver, that, subsequently to the execution of the bond of Walter F. Jones on the 8th of August, 1836, and during the year 1837, sundry defaults were made by him in failing to pay over money received by him as postmaster, and that these defaults were permitted to remain unclaimed by suit up to the 12th of March,
 
 *685
 
 1840, the period at which this suit was instituted a length of time from the occurrence of those defaults comprising an interval of more than two years.
 

 The fourth plea of the defendant below is simply a general averment, that the causes of action in the' declaration meri-tioned did not occur within two years next before the institution of the suit.
 

 . Th'é only evidence adduced tin this case/on behalf of the plaintiffs below, was the account' certified under the ¿ct of Congress from the Treasury Department against the postmaster, brought down to the 31st of August, 1839, exhibiting a balance in favor of the United States, at that date, of
 
 $
 
 5,515.89; and all the evidence on behalf of the defendant was a letter to him from the Postmaster-General, dated on the 19th of December, 1837, announcing the fact, that a draft had been drawn on the defendant in’favor of the Treasury Department, for the sum of
 
 $
 
 5,000 in specie, and requesting the deposit of that sum with the Bank of Virginia, at Richmond, as the agent for the treasury. Upon the aforegoing pleadings and evidence, the following prayers were made, and .instructions given at the trial.
 

 The attorney for the United States moved the court to-instruct the jury, “that all payments made by the postmaster, Walter P. Jones, to the General Post-Office, after the execution of his official bond, on the 8th of August, 1836, and subsequently to any default at the end of a quarter, without any direction by him or by the Postmaster-General as to the application of said payments, should be applied in the first instance to extinguish each successive default in the order in which it fell due; and if, by such application of said payments, the jury shall believe from the evidence that all of the defaults which occurred two years before the institution of this suit were extinguished within, two years after .the same were respectively, committed, that the. act of Congress,' which limits the .institution of suits against the sureties of a postmaster to two years after the default.of the principal, has no application to this case, and cannot affect in any degree the plaintiffs’ right 'to recover in this action.”
 

 And the counsel for the defendant moved this court to instruct the jury, —“ 1st. That if the jury shall find that the said deputy postmaster, Walter P. Jones, committed any default or defaults in office at anytime or times more than two years before the commencement of this suit, and that such default or defaults were then known to the Postmaster-General; and, further, that the said deputy postmaster continued in default to án equal or greater amount thenceforth, until he was dis
 
 *686
 
 charged from office; that the Postmaster-General failed to institute, or cause to be instituted, a suit against the said deputy, postmaster and his sureties for two years from and after such default or defaults were made, — then the defendant, Thomas Ap Catesby Jones, one of the sureties of the said deputy postmaster, is not liable to the United States, nor can any suit be maintained against him on the official bond of the said deputy postmaster, wherein ■ the defendant was bound as one of the sureties for any default or defaults committed by the said deputy postmaster.
 

 “ 2d. That as this suit was commenced on the 12th of March, 1840, the jury should inquire whether any default was committed by the said deputy postmaster, Walter F.' Jones, in not duly paying over any balancé or balances of money which became due from him on account of collections by him officially made before the end of the quarter next preceding the. 12th of March, 1838, namely, the quarter ending on the 3lst of December, 1837. ■ And if the jury shall find that the said deputy postmaster was so in default in not duly paying over such balances or balance due from him on account of collections by 'him officially made before the end of the quarter ending the 31st of December, 1837, and that such default was then known to the Postmaster-General, then they should apply, towards the discharge of such balances or balance, all such payments made by the said deputy postmaster during his continuance in office subsequently to the 31st of December, 1837, as they shall find to have been made out of moneys officially collected by him before that date, or out of his private funds ; and they should apply all other payments made by him after that date, and during his continuance in office, towards the discharge of the balances or balance which became due from him on account of moneys by him officially collected after the 31st of December, 1837, during his continuance in office.
 

 “3d. And that, as to the payment of $ 1,121.54, which was made by the said deputy postmaster after he. was discharged from his office, the jury should inquire v hether that payment was made by him out of moneys remaining in his hands on account of collections officially, made by him before the 31st of December, 1837, or out of his own private funds ; or whether that payment was made out of moneys officially collected by him during his continuance in office subsequently to the 31st of December, 1837; and if the jury shall find that that payment was made, and of moneys remaining in his hands of collections by him officially made prior to the 31st of December, 1837, or put of his own private funds, then the jury should apply that payment towards the discharge of the bal-
 
 *687
 
 anee which was due from him on the 31st of December, 1837; but if the jury shall find that that payment of $ 1,121.54 was made by the .said deputy postmaster out of money officially collected by him during his continuance in office subsequently to the 31st of December, 1837, then they should apply the said payment towards the balance that accrued and became due from him on account of moneys officially collected by him during his continuance in office subsequently to the 31st of December, 1837.”
 

 “ Whereupon, the court gave the 'said instruction prayed by the attorney for the United States, and refused to give the said instructions prayed by the counsel for the defendant; to which opinion of the court the defendant by his counsel excepted, and prayed the court to sign and seal this bill of exceptions, which is done accordingly.”
 

 The jury found a verdict for. the United States, assessing their damages to the sum of i$ 4,387.09, with interest thereon from the.31st day of August, 1839, till payment; and upon this verdict á judgment was entered for the sum of $ 10,000, the penalty of the bond, to be discharged by the damages and interest by the jury assessed, and the costs of suit.
 

 It is apparent that the only question of law raised in this cause is the question of an appropriation of payments by debtor and creditor, it being insisted, in behalf of the United States, and being so ruled by the court below, that when, at the end of a quarter, there might be a default on the part óf a postmaster, it was competent for him to supply such default, or to extinguish the debt then due from him, by payments made posterior to the end of the quarter; and that, in the event of an omission by the postmaster to appropriate the payments so made by him, it was the right of the government to apply them.at its discretion to the extinguishment of previous balances; and that if, by such application, all defaults occurring within two years previously to the institution of the suit had been extinguished, the act of Congress did not affect the plaintiff’s right of recovery.
 

 On behalf of the defendants below, it is insisted that the receipts by the postmaster, within a given quarter, should be applied, exclusively or primarily, to the debt due from the postmaster for that quarter ; and that, if there should have existed any balances for previous quarters, these should not be extinguished- by subsequent receipts; and that, if permitted to remain for the space of two years without- being claimed (as such balances)
 
 by suit
 
 on the part of the government, the omission should operate a complete exoneration of the sureties. With respect to the position contended for as above, it may be
 
 *688
 
 remarked, that a construction of the act of Congress which, in numerous instances, would interpose -in the way of a debtor obstructions to the voluntary payment of his own debt, and compel the creditor to resort to a reluctant, dilatory, and expensive litigation for its recovery, would never be adopted except under the influence of some controlling principle or necessity, rendering such a proceeding Unavoidable;. and no such principle or necessity can be perceived where a creditor is willing to receive his money, the debtor i's willing to pay it, and the surety assents to, or acquiesces in, the payment. We cannot therefore approve an interpretation of the act of Congress like that assumed in thé defence, tvhich would require' that quarterly balances should at all events; and in opposition - to the will of the parties, justly inferred from their conduct, remain open and unsatisfied, to become the subjects .of future contest. . .
 

 Upon the question of the appropriation of payments, some diversity, and even contrariety, may be found in the doctrines of the courts; yet nothing of the kind, it is thought, can' be deduced from them which should embarrass the adjudication in thjs case. In the general proposition upon this subject, all . the courts agree. It is this: —
 
 “
 
 That the party paying may direct to what the application is to .be made. If he waives his right, the party receiving may select the object, of appropriation. If both are silent, the law must decide.” With the third branch of this proposition, the most fruitful of uncertainty and embarrassment, namely, the decision which the law would make iri the silence or entire forbearance of the parties, .we are here not particularly called on to deal, the subject here being more immediately the right of the creditor to make an appropriation of payments, and the limitations upon that power resulting from the delay or lapse of time, from the character; of the transactions between the debtor and creditor, and the rights of third persons which may be affected by those transactions. In instances of official bonds executed by the principal at different times, with separate and distinct sets of sureties, this court has settled the law to be, that the responsibility of the separate sets of sureties must have reference to, and be limited by, the periods for which they respectively undertake by' their contract,. and that neither the misfeasance nor nonfeasance of. the principal, nor any cause of responsibility occurring, within the period for which one set of sureties have undertaken, can be transferred to, the. period for which alone another' set have made themselves answerable.. Such is the rule established in the cases of The United States
 
 v.
 
 January and Patterson, 7 Cranch, 572, and of The United States
 
 v.
 
 Eckford’s Executors,
 
 *689
 
 1 How. 250. The case before us is free from any embarrassment of conflicting interests between separate sets of sureties. In- this case there is but one' bond; it presents the instance of an appropriation of payments between a single debtor and creditor. Upon the question, as understood in this form and with this limitation, there is not a perfect uniformity in the decisions either in England or in this country. The opinion of Sir William Grant in Clayton’s case, 1 Merivale, pp. 604
 
 et seq.,
 
 has often been referred to .as a high authority in favor of the restriction of the right of the creditor to make the application to the exact period of time at which the payment was made. A close examination of the opinion of this able judge, however .it may show the inclination of his mind on this subject, can hardly be received as an express adjudication upon the point in support of which it is adduced. In Clayton’s case,' page 605, speaking of the right of appropriation in the creditor in the absence of express direction, Sir ffm. Grant says: — " There is certainly a great deal of authority for this doctrine; with some shades of distinction, it is sanctioned by the cases of Goddard
 
 v.
 
 Cox, 2 Strange, 1194; of Wilkinson
 
 v.
 
 Sterne, 9 Mod. 427; of Newmarch
 
 v.
 
 Clay, 14 East, 239; and of Peters
 
 v.
 
 Anderson, 5 Taunt. 596.” He proceeds: —
 
 “
 
 There are, however, other cases, which-are irreconcilable with this indefinite right of election in the creditor, and which seem, on the contrary, to imply a recognition of the civil law principle of -decision. Such are, in particular, the cases of Meggott
 
 v.
 
 Mills, 1 Ld. Raym. 287, and Dowe
 
 v.
 
 Holdwofth, Peake’s N. P. 64. The cases then set up two conflicting rules, — the presumed intention of the debtor, which, in some instances at least, is to govern, and the
 
 ex post facto
 
 election of the creditor, which, in other instances, is to prevail. I should therefore feel myself a good deal embarrassed, if the general question of the creditor’s right to make the application of indefinite payments were now necessarily to be determined. But I think the present case is distinguishable from any of those in which that point has been decided in the .creditor’s favor.” Again, on page 609, we find the following statement from this same judge, namely, that the creditor received his account drawn out by his debtor, the banker
 
 who kept the account,
 
 and made no objection to it whatever, and the master stated in his report that the silence of the customer (the creditor), after the receipt of his banking account, is regarded as an admission of its being correct..
 
 “
 
 Both creditor and debtor must therefore,” says the judge,
 
 “
 
 be considered as having concurred in the appropriation.” This case has been adverted to somewhat at length, although it is often referred to as.high and express authority, with the view of showing that it does
 
 *690
 
 not adjudge directly the point of the creditor’s discretion in the appropriation of payments, however strongly *it may intimate the inclination of the Master of the Rolls as to that question. Later decisions in the English courts would seem to be wholly irreconcilable with the remarks of Sir William Grant , in Clayton’s case. Thus, in Simpson
 
 v.
 
 Ingham, decided in 1823,' and reported in 2 Barn. & Cres. 65, Bayley, Justice, speaking of the right of creditors to appropriate payments, uses this language :
 

 ' — “ It has been insisted, that, at that period of time, they had no right so to do, because they were precluded by the entries which they had already made in their own books in the intermediate space of time. If, indeed, a book had.been kept for the common use of both parties as a pass-book, and that had been communicated to the opposite party, then the party making such entries would have been precluded from altering the account; but entries made by a man for his own private pur- • poses are not conclusive on him until he has made a communication on the subject of those entries to the opposite party.' Until .that time, he has the right to apply the payments as he thinks fit.” Holroyd, Justice, in the same case, says: —
 
 “
 
 The persons paying the money not having made any direct application of it, the right of making’such application devolved on the receivers; and if they have done no act which can be considered as such an application, it is equally clear, that, although they did not. apply it at the moment of payment, they would have the right to make the application at a subsequent period. The question therefore is, whether, from any entry in the books, there appears to have been a complete election by them to apply the payments in any other way than they are applied in the accounts which have been actually delivered. Now, these entries not having been communicated to the opposite, party, it seems to me. that the election was not complete. • The effect of making the entries in their own private bocks shows ' only that the idea of so applying the payment had passed in ' their own minds. It is much the same thing as if they had expressed to a stranger their intention of making such applica- ' tion of the payments, and had afterwards refused to carry such' intention into effect.” Still later (in 1834), in the case of Philpot
 
 v.
 
 Jones, 2 Adolph. & Ellis, 41, Denman, Chief Justice, says: —“ The defendant made no application of that payment ; the plaintiff therefore may elect
 
 at any time
 
 to appropriate it to this part of his demand.” And so Tauiiton, Justice, in the same case: —“ Here the £17 were paid without any application to the particular items of the account. The plaintiff then might apply that payment to the items in question ; and he was not bound to tell the defendant at tide time that he
 
 *691
 
 made such application; he might make it at
 
 any time before the case came under the consideration of the jury.”
 
 In Smith,
 
 v.
 
 Wigler and Turnicliffe, 3 Moore & Scott, 175, Tindall, Chief Justice, said that the creditor must make the appropriation at the time the money comes to his hands. Yet, in Mills
 
 v.
 
 Fowkes, 5 Bingham’s New Cases, 455, the same Chief Justice said, that, in conformity with the rule in Simpson
 
 v.
 
 Ingham, the creditor may make the application
 
 at any time before action brought.
 
 Bosanquet, Justice, said, in the same case, that the receiver might appropriate the payment, if the debtor had not, at any time befóte action commenced; and Coltman, Justice, that, notwithstanding the doubt expressed by the Master of the Rolls in Clayton’s case, the more correct view seemed to be, “ that the creditor
 
 is not limited in point of time.”
 

 In the case of The Mayor of Alexandria
 
 v.
 
 Patton, reported in 4 Cranch, 320, Chief Justice Marshall said, in pronouncing the decision: — “ It is a clear principle of law, that a person owing money on two several accounts, as upon a bond and simple contract, may elect to apply his payments to which account he
 
 pleases;
 
 but if he fails to make the application, the election passes from him to the creditor.
 
 No principle
 
 is recollected which obliges the creditor to make the election immediately. After having made it, he- is bound by it; but until he makes it, he is free to credit either the bond, or the simple contract.” So, tob, Justice Story, in delivering the decision in the case of Kirkpatrick
 
 v.
 
 The United States, 9 Wheaton, 724, says, —
 
 “
 
 The general doctrine is, that the debtor has a right, if he ■pleases, to make the appropriation of payments ; if he omits it, the creditor may make it; if both omit it, the law will apply the payments according to its own notions of justice. It'is certainly too late for either party to claim a right to make an application after tfye controversy has arisen, and
 
 a fortiori
 
 at the time of the- trial.” The two cases last cited, with those of The' United States
 
 v.
 
 January, and of The United States
 
 v.
 
 Eckford’s Executors, comprise the substance, it is believed, of all that has been ruled by this court upon the subject of the appropriation of payments. There are several State decisions upon this subject,^which are not adverted to; but .amongst these, if examined, there will be found some contrariety. An attempt to reconcile any discrepancies, either real or apparent, amongst either the English or American cases, would seem to be at least useless here, inasmuch as, with regard to the only principle connected with the appropriation of payments which we deem to be involved in this Gase, all the decisions concur. There is not even a decision to be found which denies to the creditor, where the debtor has been quiescent, the right to appropriate payments at
 
 *692
 
 the periods at which they shall be made; and the concession of. this restricted right we hold to be decisive of the character and fate of the transaction under review. That transaction exhibits. one general account of debit and credit continued from its commencement to its close,.when, and at no prior time, the balance is struck. On the due side of the account are presented the amounts received by the postmaster for postages within the periods , there stated, and on the other side are entered to his credit the sums paid by him, either in cash or in drafts from the Postmaster-General, in an exact conformity with the dates at which the transactions occurred. By this application any balance which may have existed at the end of a previous quarter was extinguished, and sometimes overpaid, and the account thus brought down to the final balance. To this mode of application no just objection can be perceived ; the parties interested in the payments were the same throughout, and equally liable for all; the payments being made .generally, and without any appropriation by the debtors who were thus liable, it was the undoubted right of the crelitor to apply them to any sums an-tecedently due. Indeed, in. the case of .The United States
 
 v.
 
 Kirkpatrick, this court say, that “in long running accounts, where debits and credits are perpetually occurring, and no balances otherwise adjusted than for the purpose of making rests, we are of opinion that payments ought to be applied to extinguish the debts according to the priority of time.” In this cáse they have been so applied, and in strict conformity with the times.at which such payments were made.
 

 We conclude our view of this question in the language of Judge Hopkinson, in the ease of The Postmaster-General
 
 v.
 
 Norvell, Gilpin, 134: — “ The application of the moneys received in a subsequent quarter to the payment of the debt Or balance antecedently due béing perfectly correct and lawful, it follows that no part of the default for. which suit, is brought accrued two years before; on the contrary, all the balances antecedent to the last quarter were extinguished by the successive payments, and the final balance falls on the last quarter.” A contrary result could be attained only by changing the manner in which, the accounts have been kept, and by arranging the actual trans-. actions as they have occurred between the parties, —a proceeding which we think is required neither by the letter nor the objects of the act of Congress. The judgment of, the Circuit Court should therefore be, and is hereby, affirmed.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern
 
 *693
 
 District of Virginia, and was argued, by counsel. On consider-, ation whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause bé, and the same is hereby, affirmed.