# CHARLESTON.

RYAN, SPECIAL RECEIVER, ETC. v. CASTO.

Submitted May 12, 1915. Decided May 25, 1915.

1. PAYMENTS—*Application—Direction.*

   A debtor, at the time of making payments, has the absolute right to direct to which of his debts payments shall be applied, but if he then omits to exercise the right, the creditor to whom the payments are made may thereafter make application thereof according to his pleasure. (p. 317).

2. BANKS AND BANKING—*Deposits—Application to Overdrafts—Estoppel.*

Where an account between a bank and its customer has covered a series of years, and numerous deposits have been made by the latter without direction as to their application, and checks have also been drawn by him upon his account, but there has been no balancing of the account, with notice to him, the bank is not precluded from afterwards exercising its right to apply such deposits to the oldest overdrafts of its customer, by the fact that in a third column of its ledger account with such customer, and for its own convenience, the daily debit and credit balances of such customer are there noted. (p. 317).

Error to Circuit Court, Roane County.

Action by Thomas P. Ryan, special receiver, etc., against J. B. Casto. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Hogg & Hogg,* for plaintiff in error.

*Pendleton, Mathews & Bell* and *S. E. Boggess,* for defendant in error.

MILLER, JUDGE:

Plaintiff, as special receiver of the Bank of Spencer, on July 25, 1913, sued in assumpsit to recover of defendant seven hundred and forty-six dollars and seventy-six cents, the amount of an overdraft as shown on the bank book of defendant, balanced and returned to him by the auditor, March 2, 1912, after the failure of the bank.

The only plea interposed by defendant was the plea of the statute of limitations of five years, and the case was by agreement of the parties submitted to the court in lieu of a jury on issues joined on this plea.

The bill of particulars filed with the declaration, a copy from individual ledgers number 7 and number 8, of said bank, and in which the account with defendant was kept, begins June 9, 1906, with a credit balance of $262.83, and, with the exception of a break in the debits and credits from May 8, 1907, to May 22, 1911, runs to February 29, 1912, just before the failure of the bank. And the ledger account, as introduced in evidence by defendant in support of his plea, shows

the same condition of the account, with the exception of a third column, showing the daily balances standing to the debit or credit of defendant. There is no evidence on the face of the ledger, nor is there any evidence showing that defendant's account was ever otherwise balanced, or that his bank book was balanced and returned with checks until March 2, 1912. Nor is there any evidence that the bank or any of its officers ever exhibited to defendant its ledger account with him, or that he had any knowledge that the ledger showed such daily or periodical balances. Nor is there any evidence that the bank ever otherwise made application of the deposits, until defendant's pass book was balanced and returned to him with the balance of overdraft shown, and for which this suit was brought.

On May 8, 1907, just before the apparent break in the ledger account, the amount of the overdraft, or the red ink balance, is shown as $676.76, and on May 22, following, is the entry of a deposit of $676.76; but such was not the correct balance on that date, and defendant swears that he knew at that time that he was indebted to the bank on account of overdraft in about the sum of $746.76.

Defendant swears that at no time before or since May 22, 1911, the time he resumed his transactions with the bank, after the apparent interim, when making his deposits, did he ever make any application of payments to any particular balance or overdraft. He says he just passed in the money to the cashier and never made any arrangement with him as to what disposition should be made of it.

In support of his plea of the statute of limitations defendant relies solely on the fact that the bank did not bring forward in red ink in ledger number 8 the overdraft existing in ledger number 7, and allowed him to check on his account, after May 22, 1911, and that the bank commissioner, after the failure of the bank, accepted his check for $43.85, which he swears was to settle the overdraft shown in the third column of the account on that ledger. The claim of defendant's counsel is that this method of keeping the account amounted to an election by the bank to let the overdraft existing May 22, 1907, stand as a loan, and to apply the deposits made subsequently to the checks drawn on the bank

after that time, and that it could not afterwards make a new election. Wherefore action on the old overdraft is now barred.

A number of legal propositions are advanced and elaborately argued by counsel, all in some degree related to the subject of the plea, but in our view of the case it is unnecessary to consider all of them. One of controlling force is that while it is the absolute right of the debtor at the time of making payments to direct to which of his debts the payments shall be applied, yet, if he omits to exercise that right, then the creditor may make the appropriation according to his will and pleasure. *Chapman* v. *Commonwealth,* 25 Grat. 721; *Jones* v. *United States,* 7 How. 682, 12 ·L. Ed. 870.

And of some pertinency also is the well settled equitable rule that when neither debtor nor creditor makes application of the payments, they will be applied, first to the discharge of the oldest debt, and so on in order until all are paid. *Smith* v. *Loyd,* 11 Leigh 512; *Howard* v. *McCall,* 21 Grat. 205; *Chapman* v. *Com., supra; Genin* v. *Ingersoll,* 11 W. Va. 549.

And as having some bearing on the case at bar is another well settled rule, that where no appropriation of payments has been made by debtor or creditor the court will apply them according to the principles of justice and equity in the particular ·case. *Norris* v. *Beaty,* 6 W. Va. 477; *Smith* v. *Loyd, supra; Buster* v. *Holland,* 27 W. Va. 510.

And this court has affirmed the proposition that if an account sued upon contains credits, either in money or anything else, they will be applied, in the absence of any special application by the parties themselves, to such portions of the account, if any there be, as would otherwise be barred by the statute of limitations. *Hanly* v. *Potts,* 52 W. Va. 263; *Genin* v. *Ingersoll, supra;* Wood on Limitations, section 110.

As noted, however, the contention of the defendant .is that as the bank carried in its ledgers this daily balance column, as stated, for its own information and convenience, it thereby made application of the deposits to the payment of the checks as drawn, and that it could not afterwards make a different application thereof, and is forever concluded by

the entries in its books. We cannot accede to this proposition. In *Jones* v. *United States, supra,* the suit was upon a postmaster's bond, and the defense was rested on the federal statute, controlling the subject, requiring the Postmaster-General upon the appointment of a postmaster to take from him a bond, conditioned for the faithful discharge of all his duties, etc., the statute providing, however, that if default should be made by the postmaster at any time, and the Postmaster-General should fail to institute suit against such postmaster and said sureties for two years from and after such default, then and in that case the sureties should not be liable to the United States, nor should suit be brought against them. Jones was postmaster from 1830 to August, 1839, during which time a running account was kept up with him at the Postoffice Department, with only one rest, namely, in August, 1836, when the account was added up and a balance transferred to a new account. The account, barring the balance column, was very like the account sued on in this case. The defendant contended there, however, that though no quarterly balances were struck, yet an analysis of the account would show that the postmaster was in default continuously.

Affirming the trial court, and the proposition of the district attorney, and denying the counter proposition of the defendant's counsel in instructions given and refused, the federal Supreme Court held, that all payments made by the postmaster to the general postoffice, after the execution of his official bond, and subsequently to any default at the end of a quarter, without any direction by him or by the Postmaster-General as to the application of said payments, should be applied in the first instance to extinguish each successive default in the order in which it fell due; and if, by such application of said payments, the jury should believe from the evidence that all of the defaults which occurred two years before the institution of the suit were extinguished within two years after the same were respectively committed, that the federal statute limiting suits against sureties to two years after the default of the principal had no application to the case, and could not effect in any degree the right of the government to recover in the action.

But assuming that the entries in the balance column of the bank's ledger evinced some intention to apply the deposits as claimed by defendant, is the bank, or its special receiver, concluded thereby? As already noted, no balances seem ever to have been struck in the account, or in defendant's pass book, until after the failure of the bank, when the account was audited, balance struck, and the book returned showing the overdraft sued for. In *Jones* v. *United States, supra,* the court reviews the early English cases, in which the decisions were conflicting, as to whether the creditor's right of election was confined to the exact time of payment, or whether, in the absence of direction of the debtor, he might afterwards make such application, and if so at what time. The decision of Sir William Grant, in Clayton's case, 1 Merivale, pp. 604, et seq., is referred to, quoted from, and a remark in the opinion noted, sometimes relied on as authority, that the creditor is limited in his right of application thereof to the time of the payment.

Combating that suggestion, however, the court, in terms applicable to the case here, says: "Later decisions in the English courts would seem to be wholly irreconcilable with the remarks of Sir William Grant in Clayton's case. Thus, in *Simpson* v. *Ingham,* decided in 1823, and reported in 2 Barn. & Cress., 65, Bayley, Justice, speaking of the right of creditors to appropriate payments, uses this language: 'It has been insisted, that, at that period of time, they had no right so to do, because they were precluded by the entries which they had already made in their own books in the intermediate space of time. If, indeed, a book had been kept for the common use of both parties as a pass-book, and that had been communicated to the opposite party, then the party making such entries would have been precluded from altering the account; but entries made by a man for his own private purposes are not conclusive on him until he has made a communication on the subject of those entries to the opposite party. Until that time, he has the right to apply the payments as he thinks fit.' Holroyd, Justice, in the same case, says: 'The persons paying the money not having made any direct application of it, the right of making such application devolved on the receivers; and if they have done no act

which can be considered as such an application, it is equally clear, that, although they did not apply it at the moment of payment, they would have the right to make the application at a subsequent period. The question therefore is, whether, from any entry in the books, there appears to have been a complete election by them to apply the payments in any other way than they are applied in the accounts which have been actually delivered. Now, these entries not having been communicated to the opposite party, it seems to me that the election was not complete. The effect of making the entries in their own private books shows only that the idea of so applying the payment had passed in their own minds. It is much the same thing as if they had expressed to a stranger their intention of making such application of the payments, and had afterwards refused to carry such intention into effect.' Still later (in 1834), in the case of *Philpot* v. *Jones,* (2 Adolph & Ellis, 41), Denman, Chief Justice, says: 'The defendant made no application of that payment; the plaintiff therefore may elect at any time to appropriate it to this part of his demand.' And so Taunton, Justice, in the same case: 'Here the £17 were paid without any application to the particular items of the account. The plaintiff then might apply that payment to the items in question; and he was not bound to tell the defendant at the time that he made such application; he might make it at any time before the case came under the consideration of the jury.' In *Smith* v. *Wigler and Turnicliffe* (3 Moore & Scott, 175), Tindall, Chief Justice, said that the creditor must make the appropriation at the time the money comes into his hands. Yet, in *Mills* v. *Fowkes* (5 Bingham's New Cases, 455), the same Chief Justice said, that, in conformity with the rule in *Simpson* v. *Ingham,* the creditor may make the application at any time before action brought. Bosanquet, Justice, said, in the same case, that the receiver might appropriate the payment, if the debtor had not, at any time before action commenced; and Coltman, Justice, that, notwithstanding the doubt expressed by the Master of the Rolls in Clayton's case, the more correct view seemed to be, 'that the creditor is not limited in point of time.'

"In the case of *The Mayor of Alexandria* v. *Patton,* re-

ported in 4 Cranch, 320, Chief Justice Marshall said, in pronouncing the decision: 'It is a clear principle of law, that a person owing money on two several accounts, as upon a bond and simple contract, may elect to apply his payments to which account he pleases; but if he fails to make the application, the election passes from him to the creditor. No principle is recollected which obliges the creditor to make the election immediately. After having made it, he is bound by it; but until he makes it, he is free to credit either the bond or the simple contract.' '' See, also, 1 Am. Lead. Cases, Hare & Wallace, 5th Ed., 344, et seq., for a full review of the English and American cases on the subject, and affirming the right of a creditor, unless he has been concluded or estopped by his acts and conduct, as pointed out in *Jones* v. *United States, supra,* to make the application at any time before suit brought.

Clayton's case, like the case at bar, involved transactions between banker and customer. The actual point decided, and applicable to banker and customer, was, that where a current account is kept by a bank, and communicated to the customer, in the absence of any specific appropriation by the parties, the payments are appropriated according to the priority in order of the entries on one side and on the other of the account, and that until the account is communicated to the customer the bank continues to have the option of applying the several payments as it sees fit, but after communication by means of a pass-book or otherwise, the bank cannot recede from its mode of stating the account to its customer.

In the recent case of *Deeley* v. *Lloyd's Bank,* (1912) A. C. 756, a case involving similar transactions between banker and customer, the customer had executed a mortgage to secure to the bank an overdraft on his current account limited to twenty-five hundred pounds, and afterward a second mortgage was executed to a third person, subject to the first, to secure another sum of money, notice of which was given to the bank on the day of its execution. Thereafter they continued the account as one unbroken account, instead of opening a fresh account. The customer continued to make deposits or payments into his account, which, if applied according to the rule in Clayton's case, would have paid off

the moneys due to the bank, at the date of the second mortgage, by a certain time. On these and other facts involved in the case it was decided, that the payments made by the customer had fully discharged the debt or overdraft existing at the time of the second mortgage. In *Stone Co.* v. *Rich,* (N. C.) 33 Am. & Eng. Anno. Cases 244, it was held, among other things, that the mere entry on the books of the debtor, owing both a secured and unsecured debt to the creditor, to whom he makes payment, is not sufficient, at law, to require the application of such payment to either debt in particular. See, also, note to this case, citing numerous decisions. In *Van Rensselaer's Ex'or.* v. *Roberts,* 5 Denio (N. Y.) 470, it is decided that if one be indebted individually and also jointly with another to the same creditor, and make a general payment, the creditor may apply it to either account which he chooses and that he might apply it to the joint account though he has given the party making the payment a receipt as for money paid him, and in which the name of the other joint debtor is not mentioned.

On these and many other authorities that might be cited we are of opinion that defendant has failed to sustain his plea, and our conclusion is to affirm the judgment.

*Affirmed.*