SAMUEL S. LONG, ALBERT M. JOHANSON and FRED S. SCHUBART, complainants-appellants,

*v.*

REPUBLIC VARNISH ENAMEL AND LACQUER COMPANY, defendant-respondent.

[Submitted October 17th, 1933. Decided January 5th, 1934.]

*Mr. Aaron A. Melniker,* for the appellants.

*Mr. Herbert M. Ellend,* for the respondent, Joseph Steiner, receiver.

The opinion of the court was delivered by

HEHER, J.

The first question presented for consideration is whether payments on account of wages due to employes, made by an

insolvent corporation during the statutory preference period of two months next preceding the institution of insolvency proceedings, must be credited on the wages earned during that period, even though there are wages due for an antecedent period. In the instant case, the payments were made and accepted in satisfaction of wages earned prior to the preference period. They were so entered on the books of the corporation. The learned vice-chancellor directed that the payments be credited on wages earned during the lien period, and the wage-claimants appealed.

Section 83 of the General Corporation act (*2 Comp. Stat. p. 1650*) creates the lien. It provides that:

"In case of the insolvency of any corporation the laborers and workmen, and all persons doing labor or service of whatever character, in the regular employ of such corporation, shall have a first and prior lien upon the assets thereof for the amount of wages due to them respectively for all labor, work and services done, performed or rendered within two months next preceding the date when proceedings in insolvency shall be actually instituted and begun against such insolvent corporation."

The legislative purpose is evident. There was a two-fold object: First, to prevent those persons whose labor was indispensable to the continuance of the business of the corporation from abandoning it, and thus suspending its operations, whenever they became alarmed by a fear of losing their wages; and, second, to give protection to a class of persons who generally work for small compensation, to whom the product of their daily labor is the sole means of support, and who are unable to protect themselves against the misfortune or fraud of their employers. *Lehigh Coal and Navigation Co.* v. *Central Railroad Company of New Jersey, 29 N. J. Eq. 252, 254; Watson* v. *Watson Manufacturing Co., 30 N. J. Eq. 588; Latta* v. *Lonsdale, 107 Fed. Rep. 585; People* v. *Remington, 10 N. Y. Supp. 310; affirmed, 109 N. Y. 631; 16 N. E. Rep. 680; James* v. *Greenville Lumber Co., 122 N. C. 157; 29 S. E. Rep. 358.* In *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 33 N. J. Eq. 192* (at *p. 196*), Vice-Chancellor Van Fleet said: "The purpose of

the statute is obvious. It is sometimes a matter of the utmost importance to the public that the business of an insolvent corporation should be kept in operation, and it is almost always true that the property of such bodies cannot be preserved unless they are kept up as going concerns. The statute was designed to accomplish both of these purposes. And to this end it was clearly necessary that the employes of a corporation in an insolvent condition, whose skill and labor are indispensable to the continuance of its operations, should be made secure for their wages. To enable an insolvent corporation to retain its employes is the primary object of the statute." And in *Campbell* v. *John W. Taylor Manufacturing Co., 64 N. J. Eq. 622,* Vice-Chancellor Grey observed: "It is a purely statutory right, and it was probably created for the purpose of preventing a general exodus of the workmen employed by corporations in anticipation of the failure of the company. It is intended to induce employes to remain at their work, even if financial disaster be threatened, by assuring them that they shall not lose their wages. A company which has a large number of employes may be in some financial straits, and may yet, if it can continue its business, regain its prosperity. But if its employes, anticipating that their wages will not be paid, leave its employ in a panic, absolute disorganization and destruction of the business may follow. The statute here intervenes and assures them that they, at all events, shall be paid."

In the instant case, the vice-chancellor held that the preference given by the statute is in derogation of the common right of equality among creditors of the same rank, and that the scope of the statute should not be extended by construction. But the inquiry here, as always, is to ascertain and give effect to the legislative intent. The legislature, by this provision, has declared a beneficent policy, and the act should be liberally construed to effectuate it. Compare *Sigley* v. *Marathon Razor Blade Co., Inc., 111 N. J. Law 25.* It has long been regarded as a proper function of the state to foster the welfare and safeguard the interests of wage-earners. Economic and other considerations underlie this long established state

policy. The amelioration of the condition of labor is recognized by enlightened government as a duty of paramount importance. And this solicitude for the wage-earners is not alone for the members of the favored class, but for the common good. It is conducive, if not, indeed, essential, to the well-being of society that the economic security and contentment of the class that contributes so largely to the furnishing of its material needs be effected and sedulously maintained. An enactment such as this should be construed in the light of this sound and firmly established policy. It should be reasonably interpreted to effectuate the plainly expressed legislative purpose to aid and assist, in the public interest, corporations and their employes in times of financial embarrassment and need. Such statutes are liberally construed in our federal jurisdictions. *Manly* v. *Hood, 37 Fed. Rep. (2d) 212; In re Rodgers & Garrett Timber Co., 22 Fed. Rep. (2d) 571; In re Erie Lumber Co., 150 Fed. Rep. 817.*

The wages earned by the claimants during the preference period were unpaid when insolvency intervened, and the statutory lien became fastened upon the assets of the corporation. The payments made during the lien period were, by agreement of the parties, applied to the satisfaction of unpaid wages earned prior to that period. And the parties, in this application of the wage payments, were clearly within their rights. Where there is a running account, payments may be applied to extinguish debts according to priority of time, so that the credits become payments *pro tanto* of the debts antecedently due. *Jones* v. *United States, 48 U. S. 681; 12 L. Ed. 870.* As between debtor and creditor, it is the debtor's legal right to direct that any payment he makes shall be applied to whichever of two or more debts he chooses; equally it is the creditor's legal right to select the application if the debtor fails to do so at the time of payment. *Grover* v. *Board of Education of Franklin Township, 102 N. J. Eq. 415; In re Van Wert Mach. Co., 186 Fed. Rep. 607.* And if neither party has exercised his right of appropriation, and a dispute subsequently arises, the court will make the appropriation, and in doing so will, as a general rule, apply the payment to

the debt which is *least secure*. *Leeds* v. *Gifford, 41 N. J. Eq. 464; affirmed, 45 N. J. Eq. 245; Terhune* v. *Colton, 12 N. J. Eq. 232; affirmed, Ibid. 312.*

The statute does not reveal a legislative purpose to abrogate, in such cases, this firmly established rule respecting the application of payments where there is a running account, or where two or more debts exist. And it therefore follows that it does not require the application of payments made during the lien period to wages earned during that period. Such a construction would thwart and defeat the obvious policy of the statute.

The federal courts have so construed a similar statute. *Manly* v. *Hood, supra; In re Reliable Furniture Manufacturing Co., 32 Fed. Rep. (2d) 805; In re Van Wert Mach. Co., supra.*

But respondent insists that the payments made in the instant case, if applied to the wages earned prior to the lien period, constitute an unlawful preference, and as such are void as to creditors of the corporation by virtue of the provisions of section 64 of the General Corporation act (*2 Comp. Stat. p. 1638*), and were, therefore, properly deducted from the wages earned during the preference period. This contention is without merit.

There is no proof that, at the time the payments were made, the corporation was insolvent in the legal sense, or had suspended its ordinary business for want of funds to carry on the same. Insolvency, under our law, denotes a general inability to meet pecuniary liabilities as they mature, by means of either available assets or honest use of credit. *Tachna* v. *Pressed Steel Car Co., 112 N. J. Eq. 411; Empire State Trust Co.* v. *Trustees of William F. Fisher & Co., 67 N. J. Eq. 602; Hoover Steel Ball Co.* v. *Schafer Ball Bearings Co., 89 N. J. Eq. 478; Jessup, Receiver, &c.,* v. *Thomason, 68 N. J. Eq. 443.* Moreover, payment to an ordinary creditor, without notice of insolvency, received while the company was carrying on its usual business, does not fall within the condemnation of the sixty-fourth section of the General Corporation act. If the rule were otherwise, a creditor could not

safely accept payment of an ordinary debt, unless he had ascertained that the corporation was solvent. As was said by Vice-Chancellor Bergen, in *Jessup, Receiver, &c.,* v. *Thomason, supra:* "Such a rule would interdict the transaction of business with a corporation, for a condition of insolvency might exist for months, or even years, while to all appearances, so far as strangers to the corporation were concerned, it was solvent; and thus every payment to a creditor, during the period of insolvency, would have to be refunded when the insolvency was disclosed."

But respondent insists that the failure of the corporation to pay the claimants' wages at the stipulated times constituted notice of its insolvency. This contention is obviously untenable. It is necessary, in disposing of it, to point out only that the irregular payment of wages due employes is not a conclusive test of insolvency.

Order reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Heher, Perskie, Van Buskirk, Kays, Hetfield, Dear, Wells, Dill, JJ. 15.