LINCOLN STORAGE WAREHOUSES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18665. Promulgated July 13, 1949.

*Andrew B. Crummy, Esq.,* for the petitioner.
*Stanley W. Herzfeld, Esq.,* for the respondent.

36

OPINION.

HARLAN, *Judge*: Respondent disallowed the deduction by petitioner of $27,132.66 in its income tax return for 1943, of which the amount of $20,330.95 is in controversy, and of $1,816.85 in its income tax return for 1944. The disallowances were computed as set forth in our findings of fact. We shall discuss these disallowances in the order named.

Respondent's position is that the amount of $20,330.95, which allegedly represents rents and salary paid by petitioner to Reginald T. Blauvelt, Sr., for 1943, was never paid to Blauvelt in 1943 or within two and one-half months after the close thereof. Therefore, he maintains that under the provisions of section 24 (c) of the Internal Revenue Code [1] this amount was not deductible by petitioner.

The credit balance of the account of Reginald T. Blauvelt, Sr., at the close of 1942 was $55,729.65. This account was credited during 1943 with amounts totaling $49,401.71 (not including loans and advances). During 1943 Blauvelt received from petitioner cash payments totaling $64,388.75. The sole issue in the determination of deficiency for 1943 is whether these payments should be applied first to the credits accrued prior to 1943, represented by the credit balance as of the close of 1942, and then to the credits accrued in 1943, or vice versa. Respondent contends that the payments should be applied first to the antecedent credits, whereas petitioner maintains that they should be applied first to the current credits.

If respondent is correct, disallowance of the deduction should be sustained, inasmuch as paragraphs (1), (2), and (3) of section

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

\* \* \* \* \* \*

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

24 (c) would then apply. Specifically, paragraph (1) would apply, as the amount deducted would represent "expenses or interest not paid within the taxable year or within two and one half months after the close thereof." Paragraph (2) would apply, as Reginald T. Blauvelt, Sr., was on the cash basis, and, therefore, the amount deducted by petitioner, not having been paid, would not be includible in his gross income for 1943. Paragraph (3) applies, as Reginald T. Blauvelt, Sr., owned all the stock of petitioner.

The question at issue, then, is simply one of the proper application of the payments made by petitioner to Reginald T. Blauvelt, Sr., in 1943, i. e., whether first to past or to current obligations. This question is one to be settled by the law of New Jersey, where the obligations arose.

It has been stipulated that there was no application by either the debtor or the creditor or the creditor's estate of the payments in question in satisfaction of any particular credit or credits in the accounts of the creditor or his estate. In such a situation the Court of Errors and Appeals of New Jersey held, in *Long* v. *Republic Varnish, Enamel & Lacquer Co.*, 169 Atl. 860; 115 N.J. Eq. 212 (1934), reversing 164 Atl. 8; 112 N.J. Eq. 321 (1933):

\* \* \* If neither party has exercised his right of appropriation, and a dispute subsequently arises, the court will make the appropriation, and in doing so will, as a general rule, apply the payment to the debt which is least secure. [Citing cases.]

In the case at bar, in the absence of other factors, it is plain that the earliest debt, by reason of the statute of limitations, is the least secure.

Similarly, in *Naidech* v. *Hempfling*, 24 Atl. (2d) 524; 127 N.J.L. 430 (1941), the Supreme Court of New Jersey said:

\* \* \* the rules as to application of payments are perfectly well settled. Those here applicable are as follows: 1. A debtor owing several debts to a creditor is entitled to direct application of any payment to whichever debt he wishes it applied. 2. If the debtor does not so direct, the creditor may make the application. 3. If neither party makes the application, and one debt is secured and another unsecured, a court of equity will usually direct application to the unsecured debt; and 4, as regards the items of a running account, payments not appropriated by either party will be applied to the earlier items. [Citing cases.]

These are generally the rules elsewhere as well, and they have been followed by this Court. *United States* v. *Kirkpatrick*, 9 Wheat. 720 (U. S. 1824); *Delaware Dredging Co.* v. *Tucker Stevedoring Co.*, 25 Fed. (2d) 44 (CCA-3, 1928); *Lorenz Co.*, 12 T.C. 263; *McConway & Torley Corporation*, 2 T.C. 593; 48 C.J., Payment, § 110 b (1); 40 Am. Jur., Payment, § 132, 137; Restatement, Contracts (1932), vol. 2, § 394.

In spite of the stipulation that there was no application of the payments to any particular credit, however, petitioner argues that the

income tax returns for 1943 of both the debtor and the creditor show a recognition that the payments were to be applied first to current obligations, and that, therefore, this Court should treat such recognition as an application to current obligations. But we do not understand the returns either of petitioner or of Reginald T. Blauvelt, Sr., to show any such application. By deducting in its 1943 return the sum of $49,401.71 for salary, interest, and rents, petitioner, which was on the accrual basis, merely indicated that it became obligated during 1943 to pay that sum to Blauvelt. It does not follow that the payments to Blauvelt in that year were applied by petitioner first to the credits for 1943 and then to the credit balance of the prior year.

Nor does the fact that Reginald T. Blauvelt, Sr., reported $49,401.71 in his 1943 return imply that he believed that payments in the amount of $64,388.75 were first to be applied against the $49,401.71 accrued by the petitioner as an obligation to him in that year. As the schedule in our findings of fact shows, from 1935 through 1943 Blauvelt followed a consistent policy of reporting as income the payments from petitioner when the payments were less than the current accruals in his favor and of reporting the accruals when the accruals were the smaller of the two sums, with the single material exception of 1941, the first year in which his credit balance declined instead of continuing to increase. His reporting of the accruals during 1943 rather than the larger amount paid him therefore does not indicate a recognition by him that payments were to be applied against current accruals, but is only a reflection of his settled policy of reporting the smaller of the two amounts.

There having been no application of these payments by either the debtor or the creditor prior to the controversy herein, then, it is fundamental that it is incumbent upon this Court to make the application. We therefore hold, under the law of New Jersey, as set forth, that the payments made by petitioner to Reginald T. Blauvelt, Sr., in 1943 should be applied first to the indebtedness of petitioner to Reginald T. Blauvelt, Sr., incurred prior to 1943 and thereafter to the indebtedness incurred in 1943. Respondent's computation not being otherwise in dispute, we must hold that he did not err in disallowing the deduction of $27,132.66 from petitioner's gross income for 1943.

As to the disallowance of the deduction by petitioner of $1,816.85 from gross income for 1944, respondent's position is that it should be disallowed for the same reasons as the deduction for 1943 just discussed. To repeat, he maintains that the sum of $1,816.85, which allegedly represents interest, rents, and salary paid by petitioner to Reginald T. Blauvelt, Sr., and to the estate of Reginald T. Blauvelt, Sr., deceased, for 1944, was never paid to Blauvelt or to his estate in 1944 or within two and one-half months after the close thereof.

Therefore, he maintains that under the provisions of section 24 (c) this amount was not deductible by petitioner.

The credit balance of the account of Reginald T. Blauvelt, Sr., at the close of 1943 was $42,732.61. His account and that of his estate were credited during 1944 with amounts totaling $42,626.51. During 1944 Blauvelt and his estate received from petitioner cash payments totaling $67,239.77. The issue is whether these payments should be applied first to the credits accrued prior to 1944, represented by the credit balance as of the close of 1943, and then to the credits accrued in 1944, or vice versa. As with the same question in regard to the payments for 1943, respondent contends that the payments should be applied first to antecedent credits, whereas petitioner maintains that they should be applied first to current credits. For the same reasons we gave as to our holding on the payments in 1943, we hold that respondent's contention is correct.

A further question appears as to the disallowance of the deduction of $1,816.85 in 1944. In its return for that year, the estate of Reginald T. Blauvelt, Sr., stated that the return was prepared on the accrual basis. If so, paragraph (2) of section 24 (c) would not apply and petitioner would be entitled to claim the deduction of all amounts accrued to the account of the estate during 1944, regardless of whether paid or not. Respondent, however, determined that the estate was on the cash basis.

As was said by the Supreme Court in *Aluminum Castings Co.* v. *Routzahn*, 282 U. S. 92 (1930):

\* \* \* But whether a return is made on the accrual basis, or on that of actual receipts and disbursements, is not determined by the label which the taxpayer chooses to place upon it.

Beyond the bare statement mentioned, there is nothing in the return of the estate for 1944 to show an accrual rather than a cash basis. Petitioner has not introduced the books of the estate or any other evidence to show that the estate was on the accrual basis. Under the circumstances, then, we must hold that petitioner has failed to meet its burden of proof and respondent's determination that the estate was on the cash basis must be presumed to be correct.

Respondent's computation not being otherwise in dispute, we must hold that he did not err in disallowing the deduction of $1,816.85 from petitioner's gross income in 1944.

In its petition petitioner also alleged error on the part of respondent in disallowing as a deduction from gross income in 1944 an expenditure of $985. No proof was offered by petitioner in support of this allegation of error. This issue is therefore decided in favor of respondent.

We accordingly hold that respondent did not err in his determination of deficiencies in petitioner's income tax, declared value excess profits tax, and excess profits tax for 1943 and 1944.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

Murdock, *J.*, dissenting: The prevailing opinion denies the petitioner deductions by carrying section 24 (c) beyond its intended purpose. The petitioner is on an accrual basis. The general rule is that it is entitled to deduct items of the character involved herein when it incurs a liability to pay them and accrues them on its books. Those things all occurred in the taxable years.

Section 24 (c) is an exception to the general rule. It originally appeared as section 301 (a) of the Revenue Act of 1937, which inserted section 24 (c) of the Revenue Act of 1936. The report of the Joint Committee on Tax Evasion and Avoidance, which is dated August 5, 1937, states that the Committee had presented to it cases of artificial deductions created where the debtor kept its books and claimed deductions on an accrual basis, whereas the closely related creditor would not be required to report the items for tax purposes on the cash basis until they are actually received; the Government was delayed in getting its tax where payment in such cases was postponed for a long period of time; and the payments, if made at all, were being made in low income years, with the result that little or no tax was paid by the creditor. The Committee felt that a provision should be inserted in the law to encourage prompt payment of such obligations. The report of the Ways and Means Committee, 75th Cong., 1st sess., H. Rept. No. 1546, stated: "Under existing law, some individuals have attempted to take advantage of the difference in operation between different accounting methods of reporting income to obtain artificial deductions for interest and business expenses." This was accomplished by not making payment to the creditor until the later, more favorable year. Section 24 (c) was recommended to prevent this abuse by requiring payment within two and one-half months after the close of the taxable year of the debtor.

The petitioner in the present case paid to its creditor, within each taxable year, more than the amount of the deductions which it is claiming and the creditor reported for that year at least the amount claimed by the debtor as deductions. Thus this creditor and this debtor during these years did not do the sort of thing that Congress was trying to stop and, under such circumstances, no such technicalities as are resorted to in the majority opinion should be used to deny the petitioner the deductions which it claims.

Arundell, Opper, and Johnson, *JJ.*, agree with this dissent.