**S. S. SILBERBLATT, INC. and the Travelers Indemnity Company, Appellants,**

**v.**

**LAMBERT CORPORATION, Appellee.**

**No. 23683.**

United States Court of Appeals Fifth Circuit.

Jan. 10, 1967.

Rehearing Feb. 8, 1967.

Richard U. Simon and Simon & Simon, Fort Worth, Tex., for appellants.

Harold Clark, Waco, Tex., Gordon A. Dotson and Dotson & McFarland, Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

This is the second appeal of this case, arising from the failure of the subcontractor on United States Government Housing Projects to pay the supplier of paint for some 800 family units at Fort Hood, Texas.

S. S. Silberblatt, having incorporated S. S. Silberblatt, Inc., successfully bid on the construction of five housing projects for family units at Fort Hood, Texas. Each of the five contracts, however, was entered into by a separate corporation. These were called Fort Hood Housing Corporation No. 6, No. 7, No. 8, No. 9 and No. 10 respectively. The construction contract for each of the projects was executed by Mr. Silberblatt as President of Silberblatt, Inc., and as president of each of the housing corporations. Five payment and performance bonds were executed covering this one construction contract, with Silberblatt, Inc. as principal, and the Travelers Indemnity Company,

as surety. A separate bond was executed for each of the housing corporations; each bond covered the particular project to be developed by the housing corporation to which it was issued.

Arcotex Painting Contractors, Inc. was the painting subcontractor on the construction contracts. Lambert Corporation supplied paints and painting materials to Arcotex for the five housing projects. It delivered to Arcotex at its Fort Hood Warehouse for use on the five projects $120,585.37 worth of paints and painting materials between March 4, 1961 and July 6, 1962.

Lambert was not aware of the five separate housing corporations and had no control of or knowledge of the particular project in which the paints and painting materials were used; it merely supplied these items for the one construction project.

In February, 1962, Lambert advised Arcotex that further shipments would cease because of non-payment of the then due balance. Silberblatt, Inc., through Mr. Silberblatt, telephoned Lambert, following which Silberblatt, Inc. wrote a letter guaranteeing Arcotex's obligation.[1] Thereupon, in reliance upon the letter, Lambert resumed shipment to Arcotex until all five projects were completed. Lambert continued to bill Arcotex at the prices originally quoted to Arcotex. On March 14, 1962, Arcotex paid Lambert $18,000 on its account, leaving with $20,000 still due. Thereafter Arcotex paid for the continued shipments as the invoices for them became due. Arcotex issued its checks in the exact amount of the current invoices due and owing, noting on the checks the current amount due. Arcotex followed the system of applying the payments on the balance due for current shipments. Lambert, on the other hand, credited these payments against the unpaid balance owed by Arcotex. Upon completion of all housing projects and termination of shipments in July, 1962, there remained unpaid on Arcotex's account $20,168.73. Arcotex and Silberblatt, Inc. refused to pay this balance. Notice of default payment was given by Lambert, Inc. to Silberblatt, Inc. and Arcotex by letter dated July 31,

[1]. By letter dated Feb. 28, 1962, Silberblatt, Inc. wrote:
"Mr. Charles Lambert
Lambert Corporation
P. O. Box 151
Houston, Texas
        "Re:    Fort Hood, Texas and
                Fort Leonard Wood, Mo.
"Dear Mr. Lambert:
    "Receipt is acknowledged of yours of Feb. 26, 1962 with regard to your account with Arco-Tex Printing Contractors, Inc. at both of the above-captioned projects.
    "As explained to you over the telephone, I have assured you that you will receive payment for all materials delivered and used at the above projects, provided that prices are found to be satisfactory. However, I have made no undertaking to pay you immediately against your open account until such time as I have had an opportunity to go over the matter with you and Mr. Abriss on my next visit to Fort Hood, which I expect to be sometime in the early part of March. This was agreeable to you.
    "I believe this would work to our mutual advantage, since, although we have never undertaken to guarantee the obligations of Arco-Tex, we will, in your case, make an exception; understandably, we cannot undertake to release funds until we know and can agree on exactly what is involved.
    "We are as anxious as you to clarify the entire problem to avoid the continuance of an area of uncertainty, and you need have no doubts that the writer will personally attend to the matter within the time indicated.
                            "Very truly yours,
                            S. S. Silberblatt, Inc.
                            By:  /s/ S. S. Silberblatt
                            Shepherd S. Silberblatt
                            President"

1962, and mailed August 2, 1962, and to Travelers by letter dated and mailed August 24, 1962. Lambert instituted suit on November 13, 1962, against Arcotex, Silberblatt, Inc. and Travelers, jointly and severally. Arcotex failed to answer and an interlocutory decree was entered against it on March 25, 1963.

Silberblatt, Inc. and Travelers answered and denied liability. The principal argument of appellants was that each bond covered only the materials furnished for the particular project covered by it; that the payments made subsequent to March 18, 1962, were "applied" by Arcotex to current purchases, so that the unpaid balance represented paints and materials furnished prior to March 18, 1962, and used in one of the four projects completed on or before April 18, 1962; that recovery must be had, if at all, against the bonds covering these projects; that the notice of default of August, 1962, was not within the 90 day period required by such bonds, and that, therefore, Silberblatt, Inc. and Travelers are not liable to Lambert.

The trial court, prior to the first appeal, held that it was unnecessary to determine which particular contract the paints supplied by Lambert were used for. It made a conclusion of law, No. 2, to the effect that: "Gerrymandered application by the subcontractor [Arcotex] and/or prime contractor [Silberblatt, Inc.] of payment to the running account of the supplier plaintiff [Lambert] would not bar the claim of the supplier who continuously furnished materials received by the subcontractor and used in the projects up to their final acceptance. Under the Miller Act . . . the plaintiff is entitled to recover the balance unpaid on all the materials which had been furnished up to the conclusion of the whole contract."

This court held that the findings of fact made by the trial court were not sufficient upon which to rest the district court's judgment, and concluded that the case must be remanded for further findings under the requirements of Federal Rules of Civil Procedure 52(a).

In remanding the case this court held, "A debtor making a voluntary partial payment of his indebtedness to a creditor may direct to which portion of the indebtedness the payment shall be applied, and the creditor must apply the payment as directed or return it [citing Jones v. United States, 7 Howard 681, 48 U.S. 681, 687, 12 L.Ed. 870]. Thus the determinative issue is whether Arcotex did in fact direct Lambert to apply to current purchases the payments made after March 18, 1962." S. S. Silberblatt, Inc. v. United States, 353 F.2d 545, 548 (5 Cir.).

Upon remand, the district court expressly made the finding that Arcotex did direct Lambert to apply the payments to current purchases. Nevertheless, the trial court, apparently failing to appreciate the significance of the legal basis of this court's earlier action, proceeded to find that in effect the five separate contracts were one single contract and that the bonding company could be found liable if any one of the five contracts was in default, and timely notice had been given within the termination of the last of the contracts.

In view of the law of the case as announced by this court in its earlier decision, and because this law as there stated is correct, we must necessarily decide that the judgment of the trial court against the Travelers Indemnity Company was in error and it cannot stand. This is true because it is only as to the contract entered into on behalf of Fort Hood Housing Corporation No. 10, with completion date on July 6, 1962, that the notice of default served on the bonding company falls within the 90 day period required by the terms of the bond.

However, the case as against Silberblatt lies differently. The trial court, on both hearings, treated the letter of February 28th as a guarantee by Silberblatt of the payment of past due items as well as a guarantee that current payments would be made to Lambert. The trial court also found as a fact, on the second hearing, that the condition con-

tained in the second paragraph of the letter relating to delaying payments upon "the open account," was satisfied at the meeting held in March of 1962.[2] Thus the guaranty signed by Silberblatt on February 28th became final and binding.

Appellant Silberblatt's argument on this appeal that this letter did not amount to a guaranty of payment of the past due account does not merit serious consideration. It is plain on its face; it was acted on as such; it was considered by the trial court to be such guaranty; and we find that this was its intended and actual effect. Therefore, the judgment against Silberblatt was correct and it must stand.

Appellants' contention that it was error for the trial to include judgment for attorneys fees has been answered by our prior decision in National Surety Corp. v. United States for Use and Benefit of Olmos Bldg. Materials Co., 5 Cir., 327 F.2d 254. Moreover, this contention would have been relevant only if we affirmed the judgment against the bonding company.

The judgment as to Travelers must be reversed. The judgment against Silberblatt is affirmed.

2. Finding 8 by the trial court was as follows:
  "At a meeting in March of 1962, with representatives of LAMBERT, ARCOTEX, and SILBERBLATT present (Tr. 74, 75, 234) all of the invoices were checked for the purpose of verifying receipt of the material and prices charged. All were verified correct, with the exception of a discrepancy in the amount of $621.00, for which LAMBERT issued credit for $621.00. SILBERBLATT then had a check issued to ARCOTEX for $18,000.00; and ARCOTEX, in turn, wrote and delivered a check to LAMBERT in the amount of $18,000.-00, which was applied on the outstanding balance of the open account of LAMBERT. (Tr. 240) SILBERBLATT stated at said meeting that all subsequent shipments would be paid for in full, but that he wished to check further as to prices. (Tr. 241).
  *     *     *     *     *
  Findings No. 9 are as follows:
  "In June of 1962, the representatives of LAMBERT, ARCOTEX, and SILBERBLATT again went over all shipments and invoices. SILBERBLATT refused payment to LAMBERT for the amount remaining unpaid for materials furnished through February 28, 1962, on the grounds that even though said materials were furnished by the supplier to the subcontractor at the same prices as originally agreed upon, and even though all materials furnished after February 28, 1962 had continued to be billed and paid for at the prices originally quoted by LAMBERT to ARCOTEX, the materials *could have* been purchased from a different supplier at lower prices. (Tr. 248) Regardless of whether or not the material *could have* been obtained from another supplier at lower prices, it is an undisputed fact that LAMBERT was the sole supplier of paint and painting material for the 800 housing units in the one contract; that neither SILBERBLATT nor ARCOTEX availed themselves of such lower prices for the contract; and that neither ARCOTEX nor SILBERBLATT were under any obligation to continue ordering, receiving, and using materials furnished by LAMBERT."