Yant Construction Company v. Commissioner.
Yant Constr. Co. v. Commissioner
Docket No. 20189.
United States Tax Court
1950 Tax Ct. Memo LEXIS 64; 9 T.C.M. (CCH) 949; T.C.M. (RIA) 50258; October 27, 1950
Alfred C. Munger, Esq., for the petitioner. Marvin E. Hagen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax in the amount of $45.83, in declared value excess-profits tax in the amount of $2,650.79, and in excess profits tax in the amount of $15,693.52 for the calendar year 1943. The issues are: (1) Is petitioner entitled to deduct from gross income in 1943 the amount of $21,950 which it claims represents bonuses to employees accrued in that year? (2) If petitioner is not so entitled, is it entitled to deduct from gross income in 1943 the amount of $11,850, the amount of bonuses paid to employees in 1943, or only the amount of $1,250, representing the net amount of bonuses paid in 1943 not already accrued and *65 claimed as deductions in prior years? At the hearing petitioner abandoned other issues raised in its petition relating to respondent's inclusion in its income of profits realized on two contracts. The facts were stipulated in part and the stipulation is incorporated herein by reference. Findings of Fact Petitioner is a Nebraska corporation with its principal office at 917 North 45th Street, Omaha, Nebraska. It filed its corporation income and excess profits tax returns for the calendar year 1943 with the collector of internal revenue for the district of Nebraska, at Omaha. Petitioner is a construction company engaged in the general contracting business. During the taxable year 1943 all of petitioner's outstanding capital stock, with the exception of qualifying shares, was owned by its president, R. C. Yant. Petitioner kept its books of account and filed its returns on the accrual basis. The board of directors of petitioner, at a regular meeting held on October 1, 1940, adopted the following resolution: "That Whereas, it is necessary for the effectual transaction of business that this Corporation institute a profit sharing plan whereby its various employees will receive *66 a share of the profits of the Corporation. Therefore, be it Resolved, that this corporation do, and it hereby does, authorize and empower its president or its vice-president in conjunction with its secretary to formulate a profit sharing plan whereby various employees will share in the profits to the extent of 50% of annual profits after deducting $16,000.00 at an annually increasing amount not to exceed $5,000.00 per person at any time. Further that the president or its vice-president in conjunction with its secretary shall determine the profit sharing to be based entirely upon its earnings and the ability of the corporation to share its profits." The contents of this resolution were verbally communicated to petitioner's employees. A summary of bonuses accrued to employees on petitioner's books of account and taken as deductions on its returns, and bonuses paid, for the years 1940 to 1946 is as follows: Accrued and
Claimed as
Year
Deductions
Paid
1940
$ 5,000
None
1941
12,500
None
1942
21,850
$ 6,400
1943
21,950
11,850
1944
None
14,400
1945
11,250
10,100
1946
None
9,800
Total
$72,050
$52,550
Petitioner's president and sole *67 stockholder was not a recipient of any of the above bonuses. Of the above deduction of $21,950 claimed for 1943, the amount of $20,700 was disallowed by respondent in his notice of deficiency. Petitioner's net income as disclosed by its returns for the years 1940 to 1946 was as follows: Year
Net Income
1940
$27,998.94
1941
42,951.42
1942
25,582.46
1943
37,171.26
1944
- 11,312.51 Loss
1945
18,791.98
1946
- 12,312.98 Loss
Petitioner had ample funds on hand at all times during the years 1940 to 1943, inclusive, to have paid all unpaid bonuses accrued on its books immediately. Opinion Petitioner maintains it is entitled to deduct from gross income in 1943 the amount of $21,950, which amount was accrued on petitioner's books of account in 1943 as bonuses to employees. The general rule is that an accrual basis taxpayer is entitled to deductions of items of indebtedness in the year when the events occur that fix the amounts of such items and the taxpayer's liability therefor. Dixie Pine Products Co. v. Commissioner. 320 U.S. 516; United States v. Anderson, 269 U.S. 422. Respondent contends that petitioner incurred no liability *68 in 1943 to pay the bonuses accrued in the above amount and is therefore not entitled to the deduction claimed. We think the facts support respondent's contention. We can not find that a legally enforceable obligation to pay bonuses to employees in the above amount arose on the part of petitioner in 1943. To be sure, entries were made on petitioner's books in that year crediting certain named employees with bonuses totaling that amount. But book entries are merely evidentiary and do not determine income or deductions or the time for reporting them. Doyle v. Mitchell Brothers Co., 247 U.S. 179; Northwestern States Portland Cement Co. v. Huston (C.C.A., 8th Cir., 1942), 126 Fed. (2d) 196; Wolf Manufacturing Co., 10 B.T.A. 1161. The resolution adopted by petitioner's board of directors on October 1, 1940, provided that petitioner thereby did: "* * * authorize and empower its president or its vice-president in conjunction with its secretary to formulate a profit sharing plan whereby various employees will share in the profits to the extent of 50% of annual profits after deducting $16,000.00 at an annually increasing amount not to exceed $5,000.00 *69 per person at any time. Further that the president or its vice-president in conjunction with its secretary shall determine the profit sharing to be based entirely upon its earnings and the ability of the corporation to share its profits." We can not say that petitioner's employees, even after bonuses had been credited to them on the books, received a legal right to collect such bonuses by virtue of the above resolution. The resolution was a mere authorization to petitioner's officers to formulate in the future a bonus plan according to a certain formula, the determination of bonuses to be based upon petitioner's "earnings and the ability of the corporation to share its profits". No resolution actually granting bonuses in the amount of $21,950 in 1943 or designating the recipients thereof was ever adopted by the board of directors. See Federal Machine & Welder Co., 11 T.C. 952, 960. But petitioner asserts that it had an oral agreement with its employees to pay the above bonuses. Petitioner evidently rests this assertion on the following testimony of its president: [Direct Examination.] "Q. Now, Mr. Yant, I will ask you, what conversations did you have with those *70 employees who might be subject to this profit-sharing arrangement at or about the time of this meeting on exhibit 1, which was the first day of October, 1940, or prior thereto? "A. We just talked it over; nothing but verbal. * * *
"Q. Was the arrangement discussed at any other time after the date of this meeting between you and those key employees? "A. Yes, some, but they knew what it was, and it never changed and there wasn't much for discussing; the same as when we started, a share of the profits was all; we talked it over. [Cross-Examination.] "Q. You had no employment contract giving your employees any profit sharing or additional compensation? "A. Verbal, yes; no written, just verbal. We don't do it in writing." We can conclude from this testimony only that the contents of the resolution of October 1, 1940, were verbally communicated to the employees and we have so found. But there is no evidence in such testimony or elsewhere to show any agreement on the part of petitioner, oral or written, express or implied, to pay $21,950 in bonuses in 1943 to the particular employees who were credited with that amount on petitioner's books in that year. Nor does the *71 evidence support petitioner's assertion that it was agreed that the employees could draw the amounts of bonuses with which they were credited on the books whenever they desired. Petitioner's president so testified, but he also testified that he himself determined in January 1944 what portion of the bonuses accrued to the employees in 1943 would be paid to them at that time. We have found that petitioner had ample funds from 1940 through 1943 to have paid all the bonuses accrued on its books in those years. Yet though bonuses were accrued totaling $60,800 from 1940 through 1943, petitioner only paid total bonuses of $18,250 in 1942 and 1943 and $14,400 more in 1944. It is beyond belief that if petitioner's employees had really had a legal, unfettered right to draw the sums to their credit on petitioner's books when credited, the employees would have chosen instead to let such sums remain in petitioner's possession indefinitely or for years after the crediting. The cases cited by petitioner as supporting the deduction are distinguishable. In Willoughby Camera Stores, Inc. v. Commissioner (C.C.A., 2nd Cir., 1942), 125 Fed. (2d) 607; reversing 44 B.T.A. 520, *72 the court found an implied contract on the part of the taxpayer company to pay bonuses where the inducement of such bonuses was held out to the employees at the time of hiring. The court therefore held that sums credited to the reserve for such bonuses were properly deducted by the taxpayer company in the years credited. As we have pointed out, there was no contract on the part of petitioner with the employees here, express or implied. In Thurman v. Studebaker Corp. (C.C.A., 7th Cir., 1937), 88 Fed. (2d) 984, the court also found an agreement on the part of the taxpayer corporation to pay bonuses to its employees according to a specified plan and accordingly allowed the deduction of bonuses credited under that agreement. In Brampton Woolen Co. v. Commissioner (C.C.A., 1st Cir., 1930), 45 Fed. (2d) 327; reversing 18 B.T.A. 1075, the board of directors of the taxpayer company informally agreed in 1918 that the amount of compensation then authorized and being paid to the officers, who were all directors, was insufficient and that there should be substantial increases commensurate with the duties performed. However, not until 1919 did the board *73 of directors actually vote additional salaries aggregating $30,000, which were promptly paid. The court (Circuit Judge Wilson dissenting) held that the additional salaries were properly accrued and deducted in 1918, on the ground that the directors had informally agreed in that year for reasonable compensation for their services as officers rendered to their corporation and that they had acted conscientiously and moderately in that regard in 1919. Here we have found no agreement, formal or informal, on the part of petitioner prior to the end of 1943 to grant its employees bonuses for their services in 1943. Moreover, such bounses were voted even in 1944. In all these respects we regard the proceeding before us as distinguishable from Brampton Woolen Co. v. Commissioner, supra. In Mobile Drug Co. v. United States (D.C., S.D. Ala.), 39 Fed. (2d) 940, also cited by petitioner, the board of directors passed a resolution in 1918 increasing the salaries of certain officers for 1918 in specified amounts, if the volume of sales was sufficiently increased through the efforts of those officers. On December 31, 1918, a portion of these amounts were credited to the *74 officers. On January 31, 1919, when the books had been balanced for the year 1918, and it had been ascertained that the sales for 1918 had increased 56 per cent over the year 1917, the remainder of the specified amounts was credited to the officers. The Court held that the entire amounts credited were properly accrued and deducted in 1918, for the reason that "the debt accrued when the conditions happened on which the debt depended, not when the evidence became available to prove these conditions." Here there was no debt, since there was no resolution actually granting bonuses for 1943 or any other year. Hence Mobile Drug Co. v. United States, supra, is not in point. Respondent has allowed petitioner a deduction of $1,250 in 1943 for employees' bonuses, making the actual net disallowance $21,950 minus $1,250, or $20,700. Respondent arrived at the figure of $1,250 by subtracting $17,000, the sum of bonuses accrued and allowed as deductions in 1940 and 1941, when no bonuses were paid, from $18,250, the sum of bonuses actually paid in 1942 and 1943 in the respective amounts of $6,400 and $11,850. Petitioner maintains that if this Court should disallow the deduction of *75 bonuses accrued in 1943 in the amount of $21,950, as we have done, then the deduction of bonuses actually paid in 1943, in the amount of $11,850, should be allowed. We agree with petitioner. Accrual basis taxpayers are allowed the deduction of business expenses in the year "paid or incurred". Section 43, Internal Revenue Code. There is no justification for applying, as respondent has done, $17,000 of bonuses paid in 1942 and 1943 to the $17,000 of bonuses accrued in 1940 and 1941 simply because no payments of bonuses were made in those earlier years. The rule that payments must be applied first to past and then to current obligations (cf. Lincoln Storage Warehouses, 13 T.C. 33: affd. (C.A., 3rd Cir., decided July 10, 1950), Fed. (2d) , certainly does not hold where there are no obligations. Here respondent himself contends, and we have found on the evidence, that petitioner incurred no obligations to its employees as to the bonuses accrued on the books in 1943. We have no reason to believe on the same evidence that petitioner incurred obligations to its employees as to the bonuses accrued on the books in 1940, 1941 and 1942. Therefore the payment *76 of bonuses by petitioner in 1943 must be treated simply as what it was, a payment of bonuses in 1943, pursuant to no obligations, either of 1940, 1941, or any other year. Counsel for the parties stated at the hearing and on brief that the bonuses of $17,000 accrued and claimed as deductions in 1940 and 1941 had been allowed by respondent and that those years are now barred by the statute of limitations. Even assuming without evidence that these are the facts, we do not see what bearing they have on our question here. Cases cited by respondent, such as Comar Oil Co. v. Helvering (C.C.A., 8th Cir., 1939), 107 Fed. (2d) 709, and Reliable Incubator & Brooder Co., 6 T.C. 919, to the effect that taxpayers are not entitled to double deductions of the same item, are not applicable. For, as we have indicated, there is no reason to say that there is any indentity between the bonuses paid in 1943 and the bonuses accrued in 1940 and 1941. We accordingly hold that respondent did not err in disallowing the deduction of $21,950, the bonuses accrued in 1943, but that petitioner was entitled to deduct $11,850, the bonuses paid in 1943. Therefore, respondent should properly *77 have disallowed the sum of $10,100 of the claimed deduction for bonuses in 1943. Decision will be entered under Rule 50.